UNITED STATES of America, Plaintiff–Appellee,

v.

Mohammad OSMANI, Defendant–Appellant.

No. 92–3777.

United States Court of Appeals, Seventh Circuit.

Argued March 2, 1994.

Decided March 25, 1994.

---

Lisa Huestis, Crim. Div. (argued) and Barry R. Elden, Crim. Receiving, Appellate Div., Asst. U.S. Attys., Office of the U.S. Atty., Chicago, IL, for plaintiff-appellee.

Ronald J. Clark, Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

A jury found defendant Mohammad Osmani guilty of possessing heroin with intent to distribute, 21 U.S.C. § 841(a)(1), and importing heroin into the United States, 21 U.S.C. § 952(a). Defendant appeals on the ground that inconsistent jury instructions were given regarding defendant's knowledge of the exact nature of the controlled substance he carried in his suitcases. Defendant also asserts that the district court punished him for exercising his constitutional right to trial by refusing to grant a two-level reduction in his offense level for acceptance of responsibility.

### Background

Defendant arrived at O'Hare Airport in Chicago, from Amsterdam. A United States Customs Inspector observed that defendant was very nervous. She questioned him and he appeared more nervous. A second inspector interviewed him, noting the same nervousness, including refusal to make eye contact, hard swallowing and sweating. Heroin was found in both suitcases after an extra piece of cardboard was removed from one suitcase, and a piece of rubber was removed from the second suitcase. There were 72 plastic bags containing 2,972 grams of 76% pure heroin; its retail value after being "cut" would be approximately $4,800,000.00.

Defendant was placed under arrest and interviewed by Customs and DEA agents. Defendant told the agents that he was stopping in Chicago for one night and then flying back to Washington, D.C. because he had been unable to get a flight from Amsterdam to any airport near Washington, D.C.[1] Defendant repeatedly explained that his luggage had been stolen three days earlier in Pakistan. He purchased new clothing,[2] and

---

1. Evidence introduced at trial showed that flights to Baltimore and New York were available that day, and that it cost defendant an additional $400 to take the side trip to Chicago.

2. Some of the clothing in defendant's luggage matched clothing he wore in photographs dated several months earlier.

his cousin in Pakistan gave him replacement luggage, which the cousin said would be picked up "by a friend" from defendant in the United States. Defendant denied knowing that the luggage contained nearly $5 million worth of heroin.

### Discussion

### I. Jury Instruction

 In reviewing the propriety of jury instructions, we view the instructions as a whole, and determine whether they fairly and adequately communicate the law to the jury. *United States v. McNeese,* 901 F.2d 585, 607 (7th Cir.1990); *United States v. Fournier,* 861 F.2d 148, 150 (7th Cir.1988). Defendant challenges two jury instructions given over his objection which he argues contradicted each other and may have confused the jury. The pattern instruction said the government had to prove that defendant "knowingly or intentionally possessed heroin," and knew it was a controlled substance.[3] The second instruction said it would be enough if defendant knew he possessed a controlled substance—even if he did not know it was heroin.[4]

We find that the jury instructions treated the issues fairly and adequately. This is not a case where a variance existed between the charge (possession of heroin) and the evidence at trial (*e.g.,* possession of baking soda). Instead, the defense theory was that defendant did not know he was carrying any controlled substance—not that he thought he was carrying marijuana and it turned out to be heroin. Defendant can hardly complain about the pattern jury instruction since it is more favorable to him than the law. Standing alone it would require acquittal if defendant established that he believed his suitcases were filled with cocaine and it turned out they contained only heroin. The additional jury instruction clarified that the government need only prove that he possessed *some* controlled substance.[5] We find that giving both instructions was reasonable and provided the jury with an intelligible statement of the relevant law. *See United States v. Fragoso,* 978 F.2d 896, 902 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1664, 123 L.Ed.2d 282 (1993).

We note, however, that the Ninth Circuit pattern jury instruction on this issue is clearer, and may be helpful for the Seventh Circuit's Committee on Federal Criminal Jury Instructions to review the Ninth Circuit instruction.[6] *See United States v. Lopez–Mar-*

---

**3.** The entire pattern jury instruction read:
"To sustain the charge of possession of heroin with intent to distribute as charged in Count One, the government must prove the following propositions:
First, the defendant knowingly or intentionally *possessed heroin;*
Second, the defendant *possessed heroin* with the intent to distribute it; and
Third, the defendant *knew the substance was a controlled substance.*
If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty of Count One. If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty of Count One." Federal Criminal Jury Instructions of the Seventh Circuit, Vol. III at 116 (1986). (Emphasis added.)

**4.** This instruction read:
"As to each count, the government need not prove that the defendant knew the exact nature of the controlled substance in his possession or what particular controlled substance he possessed. The government need prove only that the defendant knew that he possessed some controlled substance."

**5.** *See, e.g., United States v. Martinez,* 981 F.2d 867, 873 (6th Cir.1992) (knowledge of exact nature of controlled substance is not necessary), *cert. denied sub nom, Escamilla v. United States,* —— U.S. ——, 113 S.Ct. 1874, 123 L.Ed.2d 493 (1993); *United States v. Trujillo,* 959 F.2d 1377, 1381 (7th Cir.) (nature of controlled substance is not an element of the crime for purposes of instructing on a lesser included offense), *cert. denied,* —— U.S. ——, 113 S.Ct. 277, 121 L.Ed.2d 204 (1992); *United States v. Herrero,* 893 F.2d 1512, 1534–35, 1537 (7th Cir.) (co-conspirator does not need to know specific drug that the conspiracy seeks to distribute), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990). *See also United States v. Foster,* 939 F.2d 445 (7th Cir.1991) (same instruction given; not challenged on appeal).

**6.** The Ninth Circuit's pattern jury instruction No. 9.04A reads:
"The defendant is charged in [Count ——— of] the indictment with possession of [e.g. cocaine] with intent to distribute in violation of Section 841(a)(1) to Title 21 of the United

*tinez,* 725 F.2d 471, 475 (9th Cir.1983), *cert. denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984). *See generally,* Devitt, Blackmar, O'Malley, 2 Federal Jury Practice and Instructions (Criminal) (4th ed. 1990) § 54.15.

## II. Acceptance of Responsibility

■ Defendant next argues that the district court erred when it refused to grant a two-point reduction for acceptance of responsibility under United States Sentencing Guidelines (U.S.S.G.) § 3E1.1. The presentence investigation report (PSI) recommended that defendant receive the two-level reduction. The district court disagreed with this recommendation, noting defendant was not timely in his admission. Defendant lied to the customs officers and failed to countermand those lies in a timely manner. "[H]e allowed that tale that he told to the officers to be repeated and repeated in his own defense, with the hope that somehow, although erroneous, and although he knew it was erroneous, it would be accepted by the jury, and he'd be acquitted." The court added that defendant "allowed his lawyer to vigorously argue [the false story], knowing his lawyer was not arguing the truth * * *, using the lawyer, basically, as a tool."

■ The question of whether a defendant has accepted responsibility is factual and will be overturned only if clearly erroneous. *United States v. Yanez,* 985 F.2d 371 (7th Cir.1993). The defendant bears the burden of demonstrating that he is entitled to a reduction for acceptance of responsibility. *United States v. Guadagno,* 970 F.2d 214, 223 (7th Cir.1992).

■ The Guidelines permit a two-level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1(b). Going to trial does

not automatically mean no reduction for acceptance of responsibility is possible. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). Thus a sentencing judge may not impose a harsher sentence on a defendant who chooses to exercise his constitutional right to trial rather than to plead guilty. *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The Guidelines commentary adds the following:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." U.S.S.G. § 3E1.1, Commentary, Application Note 2.

Defendant's pre-trial statements and conduct and the particular type of defense he presented refute his later attempt to accept responsibility for his criminal behavior. When stopped at the airport, defendant re-

States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly possessed ____; and

Second, the defendant possessed it with the intent to deliver it to another person.

It does not matter whether the defendant knew that the substance was ____. It is sufficient that the defendant knew that it was some kind

of a prohibited drug." Manual of Model Criminal Jury Instructions for the Ninth Circuit, No. 9.04A. The comment to the jury instruction adds:

"The use of 'controlled substance' in jury instructions should be avoided. Instead, the specific controlled substance involved in the case should be referred to. However, the defendant does not need to know what the controlled substance is so long as he knows he has possession of such a substance." *Id.*

peatedly told the customs inspectors during various interviews that the luggage had been lent to him by his cousin and that defendant's luggage was stolen. Defendant never changed that story prior to trial.

At trial, defendant continued the sham. While he did not testify, cross-examination by defense counsel clearly sought to attack the "essential factual elements of guilt." *United States v. Agrell,* 965 F.2d 222, 228 (7th Cir.1992). For example, defense counsel brought out on cross-examination of an FBI agent that none of defendant's fingerprints were found on the bags of heroin. He brought out on cross-examination of a DEA agent that drug dealers sometimes use an "unknowing courier," *i.e.,* a person who does not realize his luggage is being used to transport drugs, or a person who does not know what he is carrying. In closing argument, defense counsel argued that defendant was simply a man traveling around visiting family for several months, a refugee from Afghanistan; that he was an "unknowing courier" duped by a distant relative; that his luggage was stolen; that his cousin lent him suitcases; and that he acted nervous at the airport only because he had some jewelry that customs might think he had failed to declare. Even defendant's statements to the probation officer continued to hedge. He still blamed his cousin for tricking him, and insisted that he had no idea there was such a large quantity of heroin in his suitcases.

No clear error occurred. *See United States v. Guadagno, supra,* (post-trial admission of guilt to probation officer during presentence investigation interview was untimely); *United States v. Leiva,* 959 F.2d 637, 644 (7th Cir.1992) (same; defendant was "motivated more by [his] concern to improve his potential disposition than by true remorse"), *cert. denied,* —— U.S. ——, 113 S.Ct. 2372, 124 L.Ed.2d 277 (1993); *United States v. Blas,* 947 F.2d 1320, 1329–30 (7th Cir.1991) (same; "last-minute desperation attempt to accept responsibility" was not a timely manifestation of such acceptance), *cert. denied,* —— U.S. ——, 112 S.Ct. 1234, 117 L.Ed.2d 468 (1992).

This is not one of the "rare" instances when a defendant who goes to trial demonstrates that he fully accepted responsibility for his criminal conduct. *Cf. United States v. McKinney,* 15 F.3d 849 (9th Cir.1994) (holding that district court clearly erred in denying a reduction for acceptance of responsibility where defendant in this "unusual case" confessed immediately after his arrest and showed the police the gun used in the bank robbery; he tried to plead guilty prior to trial, but his attempt was rebuffed; he showed a significant amount of confusion regarding his plea status and sought to discuss it with the court, but the court refused; and at trial, defendant put on a minimal defense).

**Conclusion**

For these reasons, the decision of the district court is AFFIRMED.