**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Aliza JONES, Defendant–Appellant.**

**No. 94–1391.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1995.

Decided April 17, 1995.

Rehearing Denied May 31, 1995.

Barry Rand Elden, Asst. U.S. Atty., Helen Greenwald (argued) Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Thomas G. Macey, Lyons & Macey, Chicago, IL (argued), for Aliza Jones.

Before RIPPLE and ROVNER, Circuit Judges, and MILLER, District Judge.*

ILANA DIAMOND ROVNER, Circuit Judge.

Aliza Jones pled guilty to count I of a nine-count superseding indictment that charged her and co-defendant Anthony D. Scott with executing a tax fraud scheme in violation of 26 U.S.C. § 7212(a) & 18 U.S.C. § 2. In imposing a prison sentence of 20 months, the district court refused to grant Jones a two-point reduction to her base offense level for acceptance of responsibility under section 3E1.1(a) of the Sentencing Guidelines. Jones contends in this appeal that the district court's finding is clearly erroneous, but we disagree and thus affirm her sentence.

## I.

The superseding indictment charged Jones and Scott with managing a tax fraud scheme that involved the filing of false and fraudulent tax returns through the Internal Revenue Service's (IRS's) Electronic Filing Program ("EFP").[1] The indictment charged that Jones and Scott, after collecting information from individuals we will call "runners," prepared W–2 forms, tax returns, and other documents in a runner's name. Utilizing false employment, income, and withholding information, these documents claimed that the runner was entitled to a tax refund. Jones and Scott then instructed the runner to utilize a tax filing service to submit the fictitious information to the IRS under the EFP.

---

* The Honorable Robert L. Miller, Jr., of the Northern District of Indiana, sitting by designation.

1. Under this program, a taxpayer does not file a traditional tax return but instead submits a completed Form 8453 to a participating tax filing service. That form requires the taxpayer to provide all the information necessary to prepare a United States Individual Income Tax Form 1040, 1040A, or 1040EZ. The filing service then electronically transmits the information on the form to an IRS office. Because the program accelerates the processing of a return, it is used most frequently by taxpayers entitled to a refund.

Tax filing services participating in the EFP offer their clients the option of applying for a Refund Anticipation Loan ("RAL") from a designated financial institution. The RAL program enables a taxpayer to obtain a short-term loan in the amount of the anticipated refund within three to five days of transmission of a return. On the basis of the refunds claimed in their fictitious returns, Jones, Scott, and the runners applied for RALs. Once the designated bank approved their applications and disbursed the loan proceeds, Jones and/or Scott would accompany the runner to the tax filing service to pick up the loan check, and thereafter to a currency exchange to cash the check. Jones and Scott would then split the loan proceeds with the runner.

Jones entered into a plea agreement with the government in which she admitted devising and conducting this scheme between approximately March 1992 and February 1993. Jones also admitted, as charged in count I of the superseding indictment, that at least ten fraudulent tax returns were filed electronically during the relevant time period as part of this scheme. Two of the returns were submitted in Jones' own name for the 1990 and 1991 tax years, a 1991 return was submitted in Scott's name, and the remaining seven returns were for the 1991 tax year and were submitted in the names of seven runners, including Jones' son. Jones agreed in the plea agreement that the refunds claimed in these ten returns totaled approximately $25,854.00, and that the payouts on these claims by either the IRS or banks in the form of RALs totaled $20,754.00.

The plea agreement also included preliminary offense level calculations under the Sentencing Guidelines. With respect to a two-point reduction for acceptance of responsibility, the government agreed as follows in ¶ 6(d):

> The defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1, a

two-level reduction in the offense level is appropriate.

Jones entered her plea of guilty pursuant to the plea agreement at a hearing before the district court on October 4, 1993. In the course of that hearing and while Jones was under oath, the district court asked whether she disagreed with any part of the government's explanation of the evidence it would have offered at her trial. Jones indicated that she "had nothing to do with" the false tax materials submitted by two of the individuals listed in the superseding indictment and in the plea agreement. (Oct. 4, 1993 Tr. at 26.) The court then asked whether individuals other than those named in the indictment and plea agreement had filed false returns pursuant to the scheme, and Jones indicated that there had been others. (*Id.*) The court explained that in connection with her pledge of cooperation in the plea agreement, it expected Jones to fully cooperate with the government in naming these other individuals. (*Id.*) The court indicated that it would take the extent of Jones' cooperation into account at her sentencing. (*Id.*)

The United States Probation Office prepared a presentence report ("PSR") prior to Jones' sentencing. The probation officer recommended that Jones be denied the two-level adjustment for acceptance of responsibility, reporting that in her meetings with the officer, Jones had acknowledged only a portion of the conduct to which she had pled guilty. The probation officer explained that in the course of their discussions, Jones had accepted responsibility for only two of the ten fraudulent tax returns, and the officer further noted that Jones had not abided the court's admonition to cooperate further by naming other runners. Indeed, the PSR stated that three separate appointments had been scheduled between Jones and the Assistant United States Attorney for this purpose but that Jones had failed to appear for each appointment.

The district court held a sentencing hearing on January 24, 1994, at which two issues were disputed—whether Jones had been a manager or supervisor under Guidelines sec-

tion 3B1.1(b)[2] and whether she had demonstrated an acceptance of responsibility under section 3E1.1(a). Prior to the district court's ruling on these issues, Jones articulated her disagreement with the probation officer's view that she was a manager or supervisor. Although she acknowledged her participation in the scheme, Jones maintained that she was not as culpable as her co-defendant Scott and that she "didn't manage or supervise anyone." (Jan. 24, 1994 Tr. at 9.) She admitted that she had induced other individuals to become involved in the tax fraud scheme but denied that she had ever advised anyone on how to prepare or to file a fraudulent return. (Id.) Based upon evidence proffered by the government, however, which was based on the guilty pleas and statements of other individuals involved in the scheme, the district court concluded that Jones was indeed a manager or supervisor. (Id. at 11.) Jones has not challenged that finding in this appeal.

The court then turned to whether Jones had accepted responsibility under section 3E1.1(a), explaining initially that its conclusion on the manager or supervisor enhancement suggested that Jones had not in fact accepted responsibility for her offense. (Id. at 11–12.) Yet the court then engaged Jones in a colloquy to resolve the discrepancy between her plea hearing statements, where she had disclaimed involvement in only two of the ten tax returns, and her subsequent statements to the probation officer, where she had admitted involvement in only two of the ten returns. Jones explained to the court that she had written only two of the returns in her own hand but that she had been present during the preparation of some of the other returns. (Id. at 12–13.) She also insisted that she had never instructed anyone else on how to prepare a fraudulent return and that she had given instructions to only one of the runners as to how to present information to H & R Block for electronic filing. (Id. at 13.)

In its proffer, however, the government indicated that a handwriting and fingerprint analysis showed that Jones had herself written at least one additional return. A further return had been written by Scott but filed in the name of Jones' son. Finally, the government explained that several of the other runners would testify, and previously had indicated to the court in the course of plea hearings, that Jones had on occasion accompanied them to the tax filing service and had instructed them in the filing of returns. Some of the runners also would attest that Jones was present at the currency exchange when a loan check was cashed and that she divided the money, giving half to the runner and keeping the remainder for herself and Scott. Jones denied these acts. (See id. at 14–16.) On the basis of the PSR, the government's proffered evidence, and Jones' own statements at the sentencing hearing, the district court determined that Jones had not accepted responsibility for her involvement in this criminal endeavor. (Id. at 16.) Absent the acceptance of responsibility reduction, then, Jones had a base offense level of 15 and thus a Guidelines range of 18 to 24 months. The district court sentenced Jones to a 20–month term of imprisonment.

## II.

Guidelines section 3E1.1(a) authorizes a two-level reduction in Jones' base offense level if she "clearly demonstrate[d] acceptance of responsibility for [her] offense." U.S.S.G. § 3E1.1(a); see also United States v. Dvorak, 41 F.3d 1215, 1217 (7th Cir.1994). The district court found that she had not done so and thus denied the reduction. Whether or not a defendant has accepted responsibility under section 3E1.1(a) is a finding of fact that is entitled to considerable deference on appeal. United States v. Panadero, 7 F.3d 691, 694 (7th Cir.1993); see also 18 U.S.C. § 3742(e); U.S.S.G. § 3E1.1, App. Note 5. We will reverse the district court's finding only if it is clearly erroneous—that is, if the finding is "without foundation" in the evidence (Panadero, 7 F.3d at 694; United States v. White, 993 F.2d 147, 151 (7th Cir.1993)) so that we are left "with the definite and firm conviction that a mis-

---

**2.** That section provides for a three-level increase to a defendant's base offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b).

take has been committed." *United States v. Yanez,* 985 F.2d 371, 374 (7th Cir.1993) (internal quotation omitted); *see also United States v. Hammick,* 36 F.3d 594, 597–98 (7th Cir.1994). Moreover, it is Jones' burden to show that she has clearly accepted responsibility for her offense. *Hammick,* 36 F.3d at 597; *United States v. Osmani,* 20 F.3d 266, 269 (7th Cir.1994).

■ It is clear from the transcript of Jones' sentencing hearing that despite her earlier guilty plea, the district court did not believe she was being entirely truthful about the role she played in the tax fraud scheme. For example, the government proffered evidence to show that more than only two tax returns actually had been drafted by Jones, that she in fact had instructed certain runners as to how to submit their returns, and that she actually had divided the proceeds of certain loan checks. These were all integral parts of the scheme charged in count I of the indictment, to which Jones had admitted her guilt at the plea hearing. That plea did not automatically entitle Jones to the two-level reduction for acceptance of responsibility, however (*Panadero,* 7 F.3d at 694; U.S.S.G. § 3E1.1, App. Note 3), and the district court was on solid ground in denying that reduction once it found that Jones had not fully admitted the extent of her participation in the fraudulent scheme. *See United States v. Dillard,* 43 F.3d 299, 306 (7th Cir.1994) (affirming denial of reduction where defendant failed to provide a complete statement of his involvement in a check cashing scheme); *United States v. Linnear,* 40 F.3d 215, 222 (7th Cir.1994) (no acceptance of responsibility where defendant attempted to minimize his role in the offense); *Hammick,* 36 F.3d at 599–601 (affirming finding that defendant had not accepted responsibility where she failed to provide a complete explanation of how she had committed the offense of conviction); *United States v. Garcia,* 35 F.3d 1125, 1133 (7th Cir.1994) (denial of reduction proper where defendant was less than truthful in describing his role in the offense); *United States v. Pitz,* 2 F.3d 723, 732 (7th Cir.1993) (affirming denial of reduction where defendant did not accept responsibility for his complete role in the conspiracy), *cert. denied,* — U.S. —, 114 S.Ct. 2141, 128 L.Ed.2d 869 (1994); *Yanez,* 985 F.2d at 375 (reduction appropriately denied where district judge found that defendant had been untruthful about his involvement with a drug conspiracy). Indeed, the application notes to section 3E1.1 specifically instruct district courts to consider whether the defendant has "truthfully admitt[ed] the conduct comprising the offense of conviction." U.S.S.G. § 3E1.1, App. Notes 1(a) & 3.

Jones nonetheless launches a two-pronged attack on the district court's finding. She first contends that despite discrepancies between the government's evidence and her own statements at the sentencing hearing, she did on three occasions accept responsibility for the conduct charged in count I. Yet, in the same way that the plea itself does not automatically entitle Jones to the two-level reduction, neither do bare statements to the district court at the sentencing hearing to the effect that she "accept[s] responsibility for [her] wrongdoing." (Jan. 24, 1994 Tr. at 22.) *See Dvorak,* 41 F.3d at 1215 ("pat recitations of responsibility are not enough under § 3E1.1(a)"); *United States v. Kerr,* 13 F.3d 203, 205 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994). We have explained before that in making the acceptance of responsibility assessment, "the sentencing judge is required to look beyond formalistic expressions of culpability and to determine whether the defendant has manifested an acceptance of personal responsibility for [her] offense in a moral sense." *Hammick,* 36 F.3d at 600; *see also Dvorak,* 41 F.3d at 1217 ("What the sentencing judge is to look for is a defendant's demonstration of 'genuine remorse,' or 'conscience.'"); *Panadero,* 7 F.3d at 694; *United States v. Beserra,* 967 F.2d 254, 256 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 419, 121 L.Ed.2d 341 (1992). The district court may consider in that assessment, as Judge Holderman did here, whether the defendant has truthfully described and accepted responsibility for her role in the offense of conviction. If it finds that she did not, her bare statements of remorse and acceptance of responsibility will not compel the reduction. *See Dvorak,* 41 F.3d at 1217.

Jones next contends that she was penalized for failing to accept responsibility for criminal conduct beyond that charged in count I of the indictment. In that regard, she points to the district court's admonition at the plea hearing that she cooperate with the government by naming other individuals who participated in the tax fraud scheme. (*See* Oct. 4, 1993 Tr. at 26.) Jones maintains that she cannot be denied the acceptance of responsibility reduction for failing to cooperate with the government by implicating others and detailing criminal conduct beyond that charged in the indictment. Although Jones is correct that under the present version of section 3E1.1(a), she cannot be required to admit to relevant conduct outside the offense of conviction once she invokes her right to remain silent,[3] the district court did not deny her a reduction on that basis. Despite the court's statement at the plea hearing that it would take the extent of her cooperation into account at sentencing (Oct. 4, 1993 Tr. at 26), the court made no subsequent mention of her failure to cooperate in the course of the sentencing hearing. The court was instead concerned at that point by the discrepancies between Jones' statements at the plea hearing and her subsequent statements to the probation officer, as well as by Jones' failure to acknowledge, despite proof to the contrary, her direct involvement in certain aspects of the scheme. The record thus does not support Jones' contention that the district court based its finding on her failure to cooperate or to accept responsibility for additional criminal conduct.

Finding no clear error, we AFFIRM Jones' sentence.

---

**3.** In *Hammick*, we explained that under the current version of section 3E1.1(a), a defendant may invoke her "right to remain silent concerning relevant conduct outside the scope of [the] offense without compromising [her] eligibility for a two-level reduction for acceptance of responsibility." 36 F.3d at 598; *see also United States v.* *Brown*, 47 F.3d 198, 203–04 (7th Cir.1995). Under the previous version of that section, however, a reduction could be denied if a defendant failed also to accept responsibility for related criminal conduct. *See Ebbole v. United States*, 8 F.3d 530, 536–37 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1229, 127 L.Ed.2d 573 (1994).